WESTERN DIST.
October, 1840.

BRAY'S EXECU-
TRIX.
vs.
BRAY.

## BRAY'S EXECUTRIX vs. BRAY.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF RAPIDES.

Co-proprietors of a succession, of full age and capable of contracting, may consent to a sale at public auction, and although the proceeds may be applied to the payment of debts, yet, if the creditors do not interfere, such a sale may be considered in the nature of a partition without the aid of a court.

The Court of Probates is without jurisdiction, *ratione materiæ*, in a contest between two co-proprietors of property seeking a partition, and where one is proceeding as plaintiff *à la folle enchère*, to have certain property purchased by the other, at the probate sale of the joint estate, resold at his risk and costs.

A party may sue for unliquidated damages for the non-compliance with the contract of sale, and it is clear in such a case the Court of Probates would be without jurisdiction. It is the same, if the party sues to compel a resale at the risk of the purchaser, although the contract of sale arose under a proceeding nominally in the probate court.

This case commenced in the probate court, in the nature of an action to compel a resale of certain property of the estate of the late Sterling G. Bray, deceased. The plaintiff shows that she is dative testamentary executrix of her deceased husband's estate, and that a sale of a large amount of property was made about the 30th March, 1838, and purchased by the defendant, J. A. Bray, who refuses to comply

WESTERN DIST.
*October*, 1840.

BRAY'S EXEC-
UTRIX
*vs.*
BRAY.

with the terms of sale, or give his notes as he was bound to do. That it is necessary this property should be sold to pay many pressing liabilities, of the estate, &c; wherefore she prays that this property be resold at the risk of the defaulting purchaser, and on a certain credit, &c. This suit was commenced in February, 1839. On the 12th March, it was ordered that J. A. Bray come forward and comply with the terms of sale within ten days.

The defendant avers that he is the brother and heir of the deceased, and also co-executor; he admits that he made the purchases and is ready to comply, or has complied with all except as to the tract of land, which was purchased at so much per acre; the improved, and unimproved land was sold for different prices, and it has not yet been surveyed to ascertain the quantity.

He further says he is an heir with the plaintiff, who is the other instituted heir, and is not bound to comply with the terms of sale until a final partition is made between them; each being entitled to one-half of the succession, &c.

Upon these pleadings and issues, the parish judge decreed that the land be again exposed to sale, as if the first adjudication had never been made, and on the same terms and conditions, and that the defendant shall be debtor to the estate for any deficiency in the price; but he shall not be entitled to any excess for which it may sell over and above the former price. The defendant appealed.

It was admitted that the plaintiff and defendant were the joint executors of Sterling G. Bray, deceased, and his instituted heirs, and that defendant had been in the possession of the land since the first sale.

There were other proceedings and innumerable orders in the probate court, many of which are unnecessary to be stated; all the material facts being mentioned in the opinion of this court.

*Brent, Thomas* and *Ogden,* argued the case for the plaintiff.

*Elgee, Dunbar* and *Hyams,* for the defendant, insisted, in

WESTERN DIST.
October, 1840.
──────────
BRAY'S EXEC-
UTRIX
vs.
BRAY.

the course of the argument, that the sale was a nullity; the purchaser being one of the executors, could not buy from himself. See *Scott's Executrix* vs. *Gorton's Executor*; 14 *Louisiana Reports*, 111.

*Bullard, J.,* delivered the opinion of the court.

The facts of this case are, that Sterling G. Bray, by his testamentary dispositions, divided his estate in equal portions between Emeline Bray and J. Asher Bray, but appointed no executor. Both the legatees applied for the dative executorship, in opposition to each other, and the Court of Probates appointed them joint executors. The estate consisted principally of lands and slaves. On the 21st February, 1838, the executor and executrix united in a petition to the Court of Probates, in which they represent their joint interest in the estate, their joint executorship, and the necessity of a sale of the estate, for the double purpose of providing for the payment of debts and to cause a partition between themselves. They pray the court to order a sale of the immoveable property at auction, upon a credit of one, two and three years, the purchasers to give their notes with two approved endorsers, payable in the Bank of Louisiana, with interest at ten per cent. from due if not punctually paid, with special mortgage, &c.; and of the moveables, on a credit of one year. The court on the same day entered the judgment as prayed for, and on the 30th March, following, the parish judge proceeds to carry the order into effect, by exposing the property for sale according to the conditions and on the terms mentioned in the judgment. The tract of land, which alone forms the object of the present controversy, was adjudicated to J. Asher Bray, one of the executors and legatees, for thirty-six thousand eight hundred dollars. It is described as follows; "a tract of land situated in this parish, and containing about eight hundred arpents, to be taken from the upper part of the tract on which the deceased last resided, and being part of the cotton plantation cultivated by him in his lifetime, together with the improvements thereon and

WESTERN DIST.
October, 1840.

BRAY'S EXEC-
UTRIX
vs.
BRAY.

appurtenances thereto belonging, were offered and adjudicated to John A. Bray, he being the last and highest bidder, for the price and sum of forty-six dollars per arpent."

No steps appear to have been taken to compel the defendant and appellant to comply with the terms of the sale until the 28th of February, 1839, when Emeline Bray presented her petition to the Court of Probates, in which she sets forth the above facts, and further represents that J. A. Bray had not complied with the terms of the sale, that in some instances he had not even given his note for the purchases made by him, and in no case, as required by the sale, with two good endorsers. She, therefore, prays that the whole property may be again offered for sale at the risk of the said defaulting purchaser, but on a credit of one and two years, instead of one, two and three years, as was at first ordered, one year having already elapsed.

On the 12th March, 1839, it appears that an *ex parte* order was entered as follows: "It is ordered, &c., that J. A. Bray, do come forward and comply with the conditions of the probate sale of the succession of S. G. Bray, made on the 30th March, 1838, within ten days after the service of this order." On the 19th of the same month, a copy of the order was served on the appellant, and on the same day the citation, issued on the above petition, was also served.

J. A. Bray, in his answer, admits that he purchased considerable property at the sale of his brother's estate, for all of which he is ready to give or has given his notes according to the terms of the sale, except the tract of land. He alleges that he is not bound to give his notes for the purchase of the land, because the same was sold per arpent, and no survey has been made to ascertain the number of acres. The improved land was estimated at a different price from the unimproved land, and the quantity of each has not been ascertained by a survey. He further answers that he is an heir and executor of his brother, and is not bound to comply with the terms of the sale until a final partition be made between him and the other instituted heir, each being entitled to one half. He further answers that the improvements on five

Western Dist.
October, 1840.
―――――――
BRAY'S EXEC-
UTRIX
vs.
BRAY.

hundred acres of land that he purchased, were inventoried as community property, whereas only one hundred acres were improved during the community; that the improvements were estimated at sixty dollars an acre, and that he would be greatly injured if compelled to give his notes before it is ascertained what quantity of land was in the tract, and what quantity was cleared during the community; that as soon as this be ascertained, he will be ready to comply with the terms of the sale. He prays that the suit may be dismissed, and that he may not be compelled to give his notes until a partition and survey shall have been made.

The judgment rendered by the Court of Probates was, that the tract of land purchased by the defendant, should be again exposed to public sale, as if the first adjudication had never been made, on the same terms and conditions on which it was previously offered, and if at the second crying it should sell for a smaller sum than that at which it was previously adjudicated to the defendant, then the said J. A. Bray should remain a debtor, for the deficiency, to the said estate, and for all expenses incurred since the first sale, and if it should sell for more, then the defendant should have no claim for the excess. The reason given for this judgment was, that the defendant had refused to comply with the terms and conditions of the first sale. From this judgment the defendant prosecutes the present appeal.

The parties were joint owners of the property, under the will of S. G. Bray, and although joint executors also, they did not and could not act in that capacity in any contest between themselves in relation to the property. It was only in relation to creditors or other legatees that they could act as executors. In the first proceeding which was had to provoke a sale of the property in the Court of Probates, they alone were parties, made no opposition, and their quality of co-executors may be laid entirely out of view. The judgment first rendered, therefore, amounted to little more than an agreement between themselves to sell the property at public auction, for the purpose of raising money to pay off debts, and of coming to a partition; neither party demands the

nullity of that sale, and, therefore, no inquiry can be made into the capacity of the purchaser; on the contrary, the plaintiff first endeavored to compel the defendant to complete it by giving his notes with endorsers, and now seeks to make it the basis of a sale *à la folle enchère*, and the defendant, not contesting the validity of the sale by the pleadings, excuses himself from giving notes, on the ground that he as a co-proprietor, cannot be compelled to pay until a final partition; and also that the land was sold by measure, and that it has not yet been surveyed.

The sale at public auction, in this case, was evidence of a contract between the parties. It rests essentially upon the consent of these parties, and although the proceeds raised may have been destined to pay the debts, yet, if the creditors did not interfere, it is not very obvious why they may not have proceeded validly to a sale in the nature of a partition without the aid of any court; they being of age and capable of contracting.

Looking at this transaction, thus stripped of its external forms and regarding the contending parties merely as co-proprietors of the property in contest, the question occurs, had the Court of Probates jurisdiction of this suit *ratione materiæ.* It is well settled that the proceeding *à la folle enchère*, is one of the cumulative remedies which the law gives to the vendor for a violation of the contract of sale. He may either prosecute in this manner by a resale at the risk of the purchaser, or he may seek to compel a specific performance, or sue for damages by the ordinary action. 14 *Louisiana Reports*, 586.

It is perfectly clear that if the plaintiff had sued for unliquidated damages for a non-compliance with the contract, the Court of Probates would have been without jurisdiction. If she had first proceeded to the sale *à la folle enchère*, which she clearly might have done (if this was a proper case for such a proceeding) without any previous judicial proceeding, as was done in the case above referred to, and had sued for the difference between the two adjudications as liquidated damages, it is equally obvious that although the contract arose under

---

*Margin notes:*

WESTERN DIST. *October,* 1840.

BRAY'S EXEC-UTRIX *vs.* BRAY.

Co-proprietors of a succession of full age and capable of contracting, may consent to a sale at public auction and although the proceeds may be applied to the payment of debts, yet, if the creditors do not interfere, such a sale may be considered in the nature of a partition without the aid of a court.

The Court of Probates is without jurisdiction, *ratione materiæ,* in a contest between two co-proprietors of property seeking a partition, and where one is proceeding as plaintiff *à la folle enchère,* to have certain property purchased by the other, at the probate sale of the joint estate, resold at his risk and costs.

A party may sue for unliquidated damages for the non-compliance with the contract of sale, and it is clear in such a case the Court of Pro-

WESTERN DIST.
October, 1840.

bates would be without jurisdiction. It is the same, if the party sues to compel a resale at the risk of the purchaser, altho' the contract of sale arose under a proceeding nominally in the probate court.

a proceeding nominally in the Court of Probates, yet that court would have been without jurisdiction. How is the case varied when that court is called upon, in the first instance, to decide that this is a proper case for a resale at the risk of the defendant? It is admitted she could not sue for the difference in that court, and if the defendant were sued for it in a court of ordinary jurisdiction, after the Court of Probates had condemned him to submit to the resale at his risk, can it be doubted that such judgment would form the authority of the thing adjudged, except as to the proceedings which took place afterwards in carrying the judgment into effect. He could no longer contest the question thus settled contradictorily with himself, and would be without defence in a suit, subsequently, for the difference of the two sales. We, therefore, conclude that the Court of Probates was without jurisdiction.

The judgment is, therefore, annulled and reversed, and it is further ordered that the suit be dismissed, and that the plaintiff pays costs in both courts.