No. 2589.—M. E. HEBERT et al. v. M. HEBERT and A. LEVERT.

A sale of succession property, for the purpose of effecting a partition among the heirs, is not an act of administration, although it be made by order of the court, through the administrator, and the sureties of the administrator are not liable to the heirs for loss which they have sustained on account of his failure to take good security for the credit portion of the price.

A surety signs the bond of an administrator with reference to the law regulating his duties as such, and securing his recourse against the latter, in case of failure to administer the estate in conformity with such requirements. But if the heirs provoke a sale of the property, for the purpose of effecting a partition, and change the time for the payment of the credit price from that fixed by law for the sale of property by the administrator, they thereby make the conditions of the surety more onerous, and he is discharged, even if the proceeding be one in which he could be held liable under any circumstances.

APPEAL from the District Court, parish of Iberville.  Posey, J.  Barrow & Pope and Samuel P. Greeves, for plaintiffs and appellees. Bentinck Egan, for defendants and appellants.

HOWELL, J.  The question presented in this case is, whether or not the sureties on an administrator's bond are liable for the failure of the administrator to take good and solvent indorsers on notes given for the price of succession property, sold for the purpose of partition among the heirs, who obtained an order of court, directing that said notes be indorsed to the satisfaction of the administrator.  In other

words, is the judging and accepting of indorsers on notes, taken for the price of succession property, *sold for the purpose of making a partition among the heirs*, an act of administration contemplated by the law which requires an administrator to give a bond, with security, for the fidelity of his administration?

After a careful consideration of the laws and jurisprudence relative to the duties and responsibilities of administrators and their sureties, we conclude that the question, as presented in this record, must be answered in the negative.

Mrs. Clarisse Bush died in May, 1859, leaving nine heirs of age, and the minor children of a tenth heir, then deceased. A family meeting, on behalf of these minors, advised a sale of *the whole estate*, on a credit, the purchasers to assume the mortgage debts, and for the balance, furnish their notes, payable at fixed periods, secured by mortgage on the property sold, "indorsed to the satisfaction of the administrator, and in such coupons or divisions as will facilitate a ·partition and settlement among the heirs." All the other heirs, including the administrator, joined in the petition for the homologation of the deliberation of this family meeting, and an order of sale to the sheriff, in accordance therewith.

At the sale, so ordered, four of the heirs, the administrator being one, purchased the bulk of the property for $129,100, assumed the mortgage in favor of the Citizens' Bank, and for the balance—$121,324—furnished their forty notes, for $3033 10 each, to the order of and indorsed by Louis Hebert, one of the purchasers, and Dr. P. M. Lambremont, who, though in good credit, owned no property, which indorsers, the sheriff's deed says, were accepted by the administrator.

After the maturity of the first series of ten notes, the administrator filed accounts, in April, 1860, showing the condition of the estate and debts paid, and proposing to pay to the heirs, who were not purchasers, their respective shares in said notes. Two accepted, but the four, who are the plaintiffs herein, refused to do so—opposed·the homologation of the accounts, on the ground, among others, that the notes offered were not such as were contemplated by the heirs and order of court, not being properly indorsed, and subsequently obtained an order of the court, directing the administrator to substitute a new tableau of distribution for the one first filed, and that the notes to be given to the opponents be indorsed to their satisfaction before delivery made, and receipt required.

Other proceedings were taken by them against the administrator, which resulted in a judgment, in 1866, against him, for their shares of the estate, less some credits; and, not being able to execute it, they instituted this suit, and obtained judgment against his sureties.

The creditors of the succession took no part in any of the said proceedings, and have not complained.

In our opinion a resort to judicial proceedings was had simply because some minors were interested, and solely for the purpose of a partition among the heirs, who thereby put an end to the regular administration of the estate under the provisions of the law, and took entire control of it themselves, the payment of the debts being only an incident in the proceedings, to all of which the creditors made no objection.

By thus taking charge of the estate, fixing terms and conditions of sale, different from those prescribed by law for the settlement of successions, and directing the administrator to accept notes indorsed to his satisfaction, and in sums convenient for effecting a partition, they constituted him their agent, to superintend the various steps necessary to complete the partition, and which it was no part of his duty, under the law, to do as administrator. The heirs must be viewed as joint owners of the property, uniting in proceedings to effect a partition, and the first judgment rendered was little more than an agreement between themselves to sell the property at public auction, for the purpose of paying the debts and coming to a partition.

This was the view taken in the case of Bray v. Bray, 16 La. 352, where the two universal legatees were appointed dative testamentary executors, and joined in an application for a sale of the property, on a credit of one, two and three years, the purchasers to give their notes, with approved indorsers, for the double purpose of providing for the payment of the debts, and to cause a partition among themselves.

The plaintiffs herein had an opportunity to accept the notes given for the property sold and secured by a mortgage thereon, and upon their non-payment at maturity, to cause the property subject to the mortgage sold to pay them. They left the notes in the hands of the party directed by themselves to receive them, and in his hands they seem to have become unavailing. This they might, to some extent, have averted.

The obligation of the administrator is to administer faithfully, and according to law, the effects of the succession intrusted to his care, and account for the same. The surety guarantees the faithful performance of these duties; and for informalities and irregularities in a sale, or the sale to an incompetent purchaser, or for worthless security, when the sale is caused by the administrator, the surety would be liable to those immediately interested in its faithful administration, to wit: creditors and heirs. 10 An. 668; 6 La. 393. But a sale for partition is not an act of administration, and we know of no law, which authorizes an administrator as such, to provoke such a sale.

The surety signs the bond with reference to the law regulating the duties of the administrator, and securing his own recourse against the latter. He knows that the law requires the administrator to sell property for cash or on twelve months' credit, and that if the admin-

istrator should fail in any duty in making a sale, he will have opportunity at the end of the twelve months at farthest, to ascertain the fact and take steps to protect himself. Where the term of credit is extended by the heirs, without his consent, beyond that fixed by the law, his condition is changed and made more onerous, and he would be released, even if the proceeding be one in which he could, under any circumstances, be held liable under the law.

It is therefore ordered that the judgment appealed from be reversed, and that there be judgment in favor of defendants, with costs in both courts.

---

WYLY, J., *dissenting.* On the question of the liability of the sureties of the administrator presented in this case, I entertain a different view of the law from that taken by the majority of the court.

In conducting the sale which was ordered for the purpose of effecting "a liquidation, settlement and partition of the succession," I think the administrator acted in his fiduciary capacity, and that his sureties are responsible for his unfaithful conduct, and acts of maladministration, whether the court ordered the property to be sold on one, two and three years' time, or whether it ordered the sale on twelve months' credit. It was his duty to see that good and solvent sureties were taken on the notes given for the price of succession property regardless of the time of maturity fixed in the notes. Whether the sale was necessary or not, he should not have parted with the property confided to him without requiring the security contemplated by law on the notes given for the price.

The sureties of the administrator who has caused loss to the succession by not requiring solvent security on the notes given for the price of succession property, can not escape liability by setting up that the sale was not necessary for the payment of debts; that the creditors might have been provided for by the sale of less property, or without causing a sale. This is no excuse. It is enough that the court having jurisdiction of the succession ordered the property to be sold on terms deemed most advantageous to those immediately interested in the succession. It was the duty of the administrator, the sworn and bonded officer of court *pro hac vice*, to have conducted the sale according to the order of the judge; and if he failed to take good security on the notes, as required, and loss occurred to those immediately interested, whether creditors or heirs, he and his sureties became liable for the amount of loss or damage resulting from disobedience of orders or acts of maladministration. Now what excuse is it for failing to take good security on the notes that they matured in one, two and three years' time. Was it not just as easy to take good security on notes

maturing at the dates named, as it would be to take good security on notes maturing in twelve months? What has the time of maturity of the notes to do with failure. to take good security?

It is, in effect, conceded if the sale had been made on twelve months' time, the usual period fixed by law, that the administrator should have taken good security; and it is said that the sureties of the administrator signed his bond with reference to the time fixed by law for credit sales; that the order prolonging the time of the credit sale made the condition of the sureties of the administrator more onerous. Such I do not regard as correct. It was just as easy to take good security on notes maturing at one time as another. Prolonging the time of payment did not make the obligation of the administrator to take good security on the notes, more onerous.

In the case before us, there was really but one security taken and he was not, at the time, worth any thing—the other indorser being one of the purchasers who was already bound as maker.

Can it be said that an administrator has discharged his duty to those immediately interested in a succession in his hands, when he takes notes for the price, amounting, in the aggregate, to $121,000 00, with only one security, and he known to be without property?

But it is said the order of the judge was, that the notes given for the property should be "indorsed to the satisfaction of the administrator."

In Fontenel v. Debailon, administrator, etc., 8 An. 509, where by the terms of sale in an insolvent succession, fixed by the creditors, the property was to be sold on a credit, the "purchaser giving his obligation, with two approved securities each," etc., it was held to be the duty of the administrator himself to require two good securities, and the responsibility was his if he failed to do so. But it is said the heirs having joined the administrator in applying for the sale on one, two and three years' time, virtually took possession of the estate, as joint proprietors, and his duties as administrator terminated; that afterwards, in conducting the sale, he acted only as their agent; that the main object of the sale was a partition among the heirs, the payment of the debts being only an incident. I do not regard the administrator as only bound to the creditors. He is bound to the heirs as well as to the creditors, and his securities are liable for any dereliction of duty that may cause loss to the heirs or creditors. Such an agency as the securities contend arose here between the administrator and the heirs, is unknown to our laws.

Part of the heirs were minors, and it would be strange that they could in any manner consent to such an agency. How minors' property can be sold through any other agency than that provided by law, I can not conceive. How could they consent to appoint the administrator their private agent to conduct the sale, and see that proper security was taken on the notes given for the price of the property

sold? The sale was a probate sale, made by the sheriff under the direction of the administrator, who was charged to see that proper security was given on the notes. The sheriff could not complete his adjudication without getting notes to the satisfaction of the administrator.

In this case, the administrator, being one of the heirs, bought the property jointly with three of the other heirs. This suit is by three of the heirs of age, and by the minor heirs of Armant Hebert, who contend that they have lost all their inheritance by the maladministration of the administrator, against whom they have judgment, and now seek to hold his securities liable. Here the administrator himself bought the undivided fourth of the property, and failed to see that legal security was taken on the notes, as his duty required. Are these minors to be divested of their share of the estate, and be told that they appointed the administrator their private agent, who ruined them, and the court can grant them no relief? I think not. The minors could not appoint a private agent. They are under the protection of the law, and the agents of court, who alone can sell their property, are responsible, and their securities guarantee their faithful discharge of duty. The law employs no irresponsible agents to sell minors' property.

In the case of Bray v. Bray, 16 La. 352, the court said: "The parties were joint owners of the property under the will of S. G. Bray, and although joint executors, also, they did not and could not act in that capacity in a contest between themselves in relation to the property." There both the legatees were of age, and both had seizin of the estate as joint executors, and the point on which that decision turned was not analogous to the one presented in this case. Here only one of the heirs had the possession and administration, and the question is, in what capacity did he conduct the sale? Did he act as the private agent of the other heirs, majors and minors, or did he follow the writ of sale in his fiduciary capacity?

To my mind it is very evident that his acts were administrative; he did not obey the orders of court, and his sureties are liable for the loss he has occasioned to the heirs. Perkins, Campbell & Co. v. H. B. Cenas, 15 An. 60; 16 La. 72; 6 La. 392; 5 La. 322; 11 La. 329; 19 La. 462; 10 An. 668; C. C. 1140. The doctrine that a surety is released by an extension of time granted to the principal debtor without his consent, does not apply to the case of the sureties on the official bond of an administrator. 9 R. 276.

For these reasons I feel it my duty to dissent in this case.

Rehearing refused.